UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEAN DUPONT, | ) |
|       Petitioner, | ) |
| v. | )    No. 2:25-cv-00593-JAW |
| HAMILTON MESERVE, et al., | ) |
|       Respondents. | ) |

**ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER**

The court issues a temporary restraining order, enjoining respondents from removing the petitioner from the District of Maine pending further order of this court.

**I.    BACKGROUND**

On November 24, 2025, Jean Dupont[1] filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against his removal from the District of Maine. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1) (*Pet.*); *Emer. Mot. for Temp. Restraining Order to Stop Transfer Without Prior Consent* (ECF No. 4) (*Emer. Mot.*). Mr. Dupont is currently in U.S. Immigration and Customs Enforcement (ICE) custody and is detained at Two Bridges Regional Jail in Wiscasset, Maine (Two Bridges). *Pet.* ¶¶ 6, 12, 40-51.

---

[1]    Pursuant to District of Maine Local Rule 10(d), Petitioner proceeds under the pseudonym Jean Dupont. *Notice of Petr.'s Actual Name under Local Rule 10(d)(1)* (ECF No. 3).

Mr. Dupont is a Rwandan citizen, attending college in Maine on a nonimmigrant F-1 student visa. *Id.* ¶¶ 1, 27-31. In 2022, Mr. Dupont left Rwanda to pursue his education and escape persecution in his home country for his political activism. *Id.* ¶¶ 2-3, 24-29. Since arriving in the United States, Mr. Dupont has pursued his studies while working part-time in southern Maine. *Id.* ¶¶ 32-33.

On January 5, 2025, South Portland Police arrested Mr. Dupont for his alleged involvement in a fight that occurred at a New Year's Eve party a few days earlier. *Id.* ¶ 35. On January 7, 2025, after posting bond, Mr. Dupont was released from state custody. *Id.* ¶¶ 37-38. ICE immediately served Mr. Dupont an administrative warrant and took him into custody, detaining him in the Cumberland County Jail in Portland, Maine. *Id.* ¶¶ 39-41. On January 8, 2025, the U.S. Department of Homeland Security (DHS) initiated removal proceedings against Mr. Dupont, alleging he violated the conditions of his student visa. *Id.* ¶ 42. On February 26, 2025, ICE transferred Mr. Dupont to Two Bridges. *Id.* ¶ 44.

On March 13, 2025, an Immigration Judge found Mr. Dupont removable to Rwanda but barred his removal under 8 U.S.C. § 1231(b)(6), based on threats of political persecution. *Id.* ¶¶ 46-47. The Immigration Judge refrained from ordering Mr. Dupont's removal to any other country in the alternative, and both DHS and Mr. Dupont waived appeal. *Id.* ¶¶ 47-48. Accordingly, Mr. Dupont's removal order and grant of withholding of removal became administratively final on March 13, 2025. *Id.* Mr. Dupont remains in ICE custody while the agency seeks removal to a country other than Rwanda. *Id.* ¶¶ 54-55.

Mr. Dupont alleges his detention violates the Immigration Nationality Act and his due process rights under the Fifth Amendment of the United States Constitution. *Id.* ¶¶ 79-94. He seeks a TRO enjoining his transfer outside the District of Maine during the pendency of his habeas proceedings against Hamilton Meserve, in his official capacity as Chair of the Board of Directors of the Lincoln and Sagadahoc Multicounty Jail Authority; James Bailey, in his official capacity as Correctional Administrator of Two Bridges; David Wesling, in his official capacity as Director of the Boston Field Office of ICE; Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of DHS; and Pamela Bondi, in her official capacity as Attorney General (collectively, Respondents). *Emer. Mot.* at 1-4; *Pet.* ¶¶ 16-21. He also seeks, inter alia, a writ of habeas corpus ordering his immediate release during the pendency of his habeas proceedings, or in the alternative, if Respondents establish a significant likelihood Mr. Dupont will be removed to a third country in the reasonably foreseeable future, an order requiring Respondents to provide ten days' notice and additional process as required by law. *Pet.* at 19-20.

## II.   LEGAL STANDARD

The standard for issuing a TRO is the same as for a preliminary injunction and is provided by traditional equity doctrines. *Aftermarket Auto Parts All., Inc. v. Bumper2Bumper, Inc.*, Civil No. 1:12-cv-00258-NT, 2012 U.S. Dist. LEXIS 143685, *3 (D. Me. Oct. 4, 2012); *accord* 11A WRIGHT, MILLER & KANE § 2942, at 37; *Alcom,*

*LLC v. Temple*, No. 1:20-cv-00152-JAW, 2020 U.S. Dist. LEXIS 79863, at *15 (D. Me. May 6, 2020) (collecting cases).

"A preliminary injunction is an extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *accord Mass. Coal. of Citizens with Disabilities v. Civ. Def. Agency & Off. of Emergency Preparedness*, 649 F.2d 71, 76 n.7 (1st Cir. 1981) ("The authority of the District Court Judge to issue a preliminary injunction should be sparingly exercised")). "In order for a court to grant this type of relief, a plaintiff 'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). "The party seeking the preliminary injunction bears the burden of demonstrating that these four factors weigh in its favor." *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006). "[T]rial courts have wide discretion in making judgments regarding the appropriateness of" preliminary injunctive relief. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 14 (1st Cir. 2010).

### III.   DISCUSSION

At the conference of counsel on November 25, 2025, Respondents conceded that a TRO should issue at this time. *Min. Entry* (ECF No. 7). In conceding the propriety of the issuance of a TRO, Respondents have implicitly admitted that the Court may

conclude that the Petitioner has proven each of the four factors essential for the issuance of a TRO. The Court accepts Respondents' concession.

"[An] injunction should issue only where [it is] essential in order effectually to protect . . . rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Here, the "irremediable" injury would be removal from this Court's jurisdiction pending Mr. Dupont's habeas corpus proceedings. Accordingly, the Court circumscribes its remedy, at this time, to prevent Respondents from removing Mr. Dupont from the District of Maine pending further order of this Court.

## IV. BOND REQUIREMENT

Pursuant to Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The First Circuit has explained "[t]he purpose of such a bond is to ensure that the enjoined party may readily be compensated for the costs incurred as a result of the injunction should it later be determined that it was wrongfully enjoined." *Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 11 (1st Cir. 2018); *accord Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring) ("The bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction").

The First Circuit has previously indicated "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond," *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991) (collecting cases), but the district courts in this circuit have generally required a bond to be posted. *See WEX Inc. v. HP Inc.*, No. 2:24-cv-00121-JAW, 2024 U.S. Dist. LEXIS 119715, at *99-100 (D. Me. July 9, 2024) (collecting cases). District courts are vested with "wide discretion" to set the amount of the bond. *Axia NetMedia*, 889 F.3d at 11; *accord Totem Forest Prods. v. T & D Timber Prods.*, No. 2:17-cv-00070-JDL, 2017 U.S. Dist. LEXIS 26062, at *5 (D. Me. Feb. 24, 2017) ("The Court has discretion to determine the amount of the security"). Here, to comply with the mandatory nature of the bond requirement, the Court requires Mr. Dupont to post a bond of $100 within 48 hours of the issuance of this Order pursuant to Federal Rule of Civil Procedure 65(c).

## V.   CONCLUSION

The Court ORDERS Respondents in this matter are hereby ENJOINED from removing Jean Dupont from the District of Maine pending further order of this Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of November, 2025