UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JEAN DUPONT,     )
           )
   Petitioner,   )
           )
   v.       )   No. 2:25-cv-00593-JAW
           )
HAMILTON MESERVE, et al.,  )
           )
   Respondents.  )

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The court grants a petitioner's request for a writ of habeas corpus, ordering his immediate release from Immigration and Customs Enforcement custody, subject to the release conditions proposed by the government.

## I. BACKGROUND

Jean Dupont[1] is a Rwandan citizen, attending college in Maine on an expired nonimmigrant F-1 student visa. *Pet. for Writ of Habeas Corpus* ¶¶ 1, 27-31 (*Pet.*). In 2022, Mr. Dupont left Rwanda to continue his education and escape persecution in his home country for his political activism. *Id.* ¶¶ 2-3, 24-29. Mr. Dupont arrived in the United States on January 13, 2022 at Chicago O'Hare International Airport in Chicago, Illinois and was admitted as a Non-Immigrant Student with an F-1 visa. *Decl. of Assistant Field Dir. Keith Chan* ¶ 7 (ECF No. 13) (*Chan Decl.*).

---

[1] Jean Dupont is a pseudonym. On December 12, 2025, Mr. Dupont moved to proceed under a pseudonym, *Pet'r's Unopposed Mot. to Proceed Under Pseudonym* (ECF No. 21), and the Court granted the motion the same day it was filed. *Order* (ECF No. 22).

Since arriving in the United States, Mr. Dupont has pursued his studies while working part-time in southern Maine. *Pet.* ¶¶ 32-33. On May 15, 2024, upon completion of his studies, Mr. Dupont remained in the United States rather than departing within 60 days as required by law. *Chan Decl.* ¶ 8.

On January 5, 2025, South Portland Police arrested Mr. Dupont after an alleged fight at a New Year's Eve party. *Pet.* ¶ 35. Mr. Dupont was charged in state court with aggravated assault and aggravated reckless conduct, and these charges remain pending. *Chan Decl.* ¶ 9. On January 7, 2025, after posting bond, Mr. Dupont was released from state custody. *Id.* ¶¶ 37-38. U.S. Immigration and Customs Enforcement (ICE) immediately served Mr. Dupont an administrative warrant and took him into custody, detaining him in the Cumberland County Jail in Portland, Maine. *Id.* ¶¶ 39-41. On January 8, 2025, the U.S. Department of Homeland Security (DHS) initiated removal proceedings against Mr. Dupont, alleging he violated the conditions of his student visa. *Id.* ¶ 42. On February 26, 2025, ICE transferred Mr. Dupont to Two Bridges Regional Jail in Wiscasset, Maine (Two Bridges). *Id.* ¶ 44.

On March 13, 2025, an Immigration Judge found Mr. Dupont removable to Rwanda but barred his removal under 8 U.S.C. § 1231(b)(6), based on threats of political persecution. *Id.* ¶¶ 46-47. The Immigration Judge refrained from ordering Mr. Dupont's removal to any other country in the alternative, and both DHS and Mr. Dupont waived appeal, and Mr. Dupont's removal order became administratively final on March 13, 2025. *Id.*

Mr. Dupont remains in ICE custody while the agency seeks removal to a country other than Rwanda. *Id.* ¶¶ 47-48, 54-55; *Chan Decl.* ¶ 16. On June 15, 2025, ICE conducted a Post Order Custody Review (POCR) pursuant to 8 C.F.R. § 241.4, electing to continue Mr. Dupont's detention while the agency sought removal to a third country. *Chan Decl.* ¶ 17. On July 9, 2025, it was recommended that ICE remove Mr. Dupont to neighboring countries, including the Democratic Republic of Congo, Burundi, and Tanzania. *Id.* ¶ 20. On September 29, 2025, ICE initiated its 180-day POCR to again review Mr. Dupont's custody status and determine whether he should be released. *Id.* ¶ 21. The 180-day POCT remains pending. *Id.*

On November 24, 2025, Mr. Dupont filed a verified petition for writ of habeas corpus and an emergency motion seeking a temporary restraining order (TRO) against his removal from the District of Maine. *Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 1) (*Pet.*); *Emer. Mot. for TRO to Stop Transfer Without Prior Consent* (ECF No. 4) (*Emer. Mot.*). On November 25, 2025, the Court issued a TRO, enjoining Respondents from removing Mr. Dupont from the District of Maine pending these proceedings. *Order on Mot. for TRO* (ECF No. 8). That same day, the Court ordered Respondents to show cause why Mr. Dupont's habeas petition should not be granted. *O.S.C.* (ECF No. 9). On December 4, 2025, Respondents filed their response, opposing Mr. Dupont's habeas petition. *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 12) (*Opp'n*). On December 8, 2025, Mr. Dupont filed his reply, *Pet'r's Traverse to Resp'ts' Return and Resp. in Supp. of Pet. for Writ of Habeas Corpus* (ECF No. 15), which he amended on December 10,

2025. *Pet'r's Am. Traverse to Resp'ts' Return and Resp. in Supp. of Pet. for Writ of Habeas Corpus* (ECF No. 20) (*Am. Reply*).

The Court held a teleconference of counsel on December 8, 2025. *Min. Entry* (ECF No. 17). The parties requested oral argument and agreed there were no factual disputes for the Court to resolve in this matter and stipulated to the facts in the parties' briefing and accompanying affidavits. To maintain the status quo during the remaining proceedings the Court converted the TRO to a preliminary injunction on December 9, 2025. *Order Converting TRO to Prelim. Inj.* (ECF No. 19). The Court heard oral argument on December 23, 2025. *Min. Entry* (ECF No. 25).

## II. THE PARTIES' POSITIONS

Mr. Dupont alleges his detention violates the Immigration Nationality Act and his due process rights under the Fifth Amendment of the United States Constitution. *Pet.* ¶¶ 79-94. He raises three claims. First, Mr. Dupont alleges his detention is unlawful as explained by the Supreme Court in *Zadvydas v. Davis*, asserting there is no significant likelihood of removal in the reasonably foreseeable future. *Pet.* ¶¶ 79-83. Second, Mr. Dupont argues his detention violates procedural and substantive due process. *Id.* ¶¶ 84-90. Pursuant to *Zadvydas* and due process, he seeks a writ of habeas corpus ordering his immediate release. *Id.* at 19-20. Third, in the alternative, Mr. Dupont alleges DHS third country removal procedure violates due process. *Id.* ¶¶ 91-94. Accordingly, if Respondents establish a significant likelihood Mr. Dupont will be removed to a third country in the reasonably foreseeable future, Mr. Dupont

seeks an order requiring Respondents to provide ten days' notice and additional process as required by law prior to securing his removal. *Pet.* at 19-20.

Respondents oppose Mr. Dupont's petition. They argue Mr. Dupont failed to "establish 'any good reason to believe there is a significant likelihood of removal in reasonably foreseeable future.'" *Opp'n* at 1-2, 4-5 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). Respondents separately oppose Mr. Dupont's due process claim regarding his third country removal, explaining that the Court lacks jurisdiction to adjudicate his claim, and even if the Court had jurisdiction, his claim fails to demonstrate that his due process rights would be violated were he to be removed to a third country. *Id.* at 2, 5-21.

## III.   LEGAL STANDARD

Generally speaking, "when an alien is ordered removed," the government must "remove the alien . . . within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day window, colloquially referred to as the "removal period," begins, as relevant here, on the date the alien's removal order becomes final. *Id.* § 1231(a)(1)(B)(i). Upon expiration of the removal period, § 1231(a)(6) permits the government to continue detaining certain classes of aliens, including those deemed to be a risk to the community, though it does not specify how long. *Id.* § 1231(a)(6). In *Zadvydas*, the Supreme Court held § 1231(a)(6) did not permit indefinite detention, only "a period reasonably necessary to secure removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). According to the Supreme Court, six months is a "presumptively reasonable period" for continued detention. *Id.* at 701. After that, if "the alien provides good

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release the alien. *Id.* "This [six]-month presumption," however, "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

## IV.    DISCUSSION

### A.    *Zadvydas* and Release from Custody

The Court begins and ends with Mr. Dupont's *Zadvydas* claim.[2] Finding Mr. Dupont has offered the Court good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future and that Respondents have failed to rebut those good reasons, the Court need not address Mr. Dupont's due process or third country removal claims at this time. *See Castaneda v. Perry*, 95 F.4th

---

[2]    Generally sister courts within the First Circuit have analyzed separately a noncitizen's challenges to allegedly indefinite detention on statutory grounds (i.e., a *Zadvydas* claim) and constitutional grounds (i.e., a due process claim) when success on those claims provide different remedies. *See Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 U.S. Dist. LEXIS 232476, at *14 (D.R.I. Nov. 26, 2025); *G.P. v. Garland*, No. 1:23-cv-322-PB, 2024 U.S. Dist. LEXIS 14841, at *13-14 (D.N.H. Jan. 29, 2024). In contrast, Mr. Dupont seeks the same remedy—immediate release—under his *Zadvydas* and due process claims (Counts One and Two). *Pet.* ¶¶ 79-90; *cf. G.P.*, 2024 U.S. Dist. LEXIS 14841, at *13 ("when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation") (citing *Galdamez v. Mayorkas*, 22 Civ. 9847 (LGS), 2023 U.S. Dist. LEXIS 19718, at *7-8 (S.D.N.Y. Feb. 6, 2023)). Because Mr. Dupont's briefing does not otherwise make explicit the distinction between his due process and *Zadvydas* claims, and because the Court grants relief under his *Zadvydas* claim, the Court does not consider his due process claims contained in Count Two of Mr. Dupont's petition. *See ACLU of Mass. v. United States Conf. of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (Federal courts are "obligated to follow the doctrine of constitutional avoidance, under which federal courts are not to reach constitutional issues where alternative grounds for resolution are available").

750, 760 (4th Cir. 2024) ("a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation").

There is no dispute that Mr. Dupont has remained in ICE custody beyond the presumptively reasonable detention period under *Zadvydas*.[3]  Mr. Dupont's removal order became final on March 13, 2025, which was three-hundred-and-two days ago, approximately one week shy of ten months ago.  Mr. Dupont's detention therefore is no longer presumptively reasonable, and the Court must determine whether he has produced "good reason to believe that there is no significant likelihood of removal in

---

[3]     The Court notes a distinct reading of *Zadvydas* different from the one advanced by the parties in this case.  Mr. Dupont asserts, and Respondents do not contest, that *Zadvydas's* six-month presumptively reasonable detention period includes the 90-day removal period under § 1231(a)(2), rather than only the period of continued detention under § 1231(a)(6).  The Court acknowledges some ambiguity in the language of *Zadvydas* on this point and concludes it is not necessary to resolve in this case.  However, the Court reads *Zadvydas* as interpreting § 1231(a)(6), not § 1231 as a whole, and it may be that the six-month *Zadvydas* period begins *after* the removal period expires (i.e., ninety days + six-months).

        *Zadvydas* as written can be read both ways.  *Contrast Zadvydas*, 533 U.S. at 689-701 (limiting "post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States"), with *id.*, at 701 ("we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time.  We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months").  Yet this Court's reading appears consistent with how the Supreme Court subsequently described *Zadvydas's* holding.  *See Jennings v. Rodriguez*, 583 U.S. 291, 298-99 (2018) ("In *Zadvydas*, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' and it further held that six months is a presumptively reasonable period."  (quoting *Zadvydas*, 533 U.S. at 609, 701)).

        However, the First Circuit has not addressed these plausible readings of *Zadvydas*, and, as best the Court can determine, dicta from the First Circuit points in both directions.  *Compare G.P. v. Garland*, 103 F.4th 898, 901 (1st Cir. 2024) ("The *Zadvydas* Court recognized a six-month window *following* the removal period during which a noncitizen's detention is presumptively reasonable") (citing *Zadvydas*, 533 U.S. at 701) (emphasis supplied), *with Hernandez-Lara v. Lyons*, 10 F.4th 19, 45 (1st Cir. 2021) (describing *Zadvydas* to "hold[ ] that once a noncitizen detained following a final removal order has been held for six months, the noncitizen may challenge his continued detention").  Given that Mr. Dupont's *Zadvydas* period has expired under either reading, coupled with the fact Respondents do not contest Mr. Dupont's reading of *Zadvydas*, the Court assumes Mr. Dupont's *Zadvydas* period expired on September 12, 2025, six months after his removal order became administratively final.

the reasonably foreseeable future," and if so, whether Respondents have sufficiently rebutted that showing. *Id.* at 699. Notably, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [must] shrink." *Id.* at 701.[4]

Mr. Dupont argues that his detention is no longer reasonably foreseeable because Respondents have not and cannot identify any date, timeframe, or plan for his removal. *Pet.* ¶¶ 54-55; *Am. Reply* at 12. In rebuttal, Respondents explain that they are "actively seeking out third countries to which [Mr. Dupont] can be removed." *Opp'n* at 4. Indeed, since July 9, 2025, ICE has been exploring removal of Mr. Dupont to neighboring countries, including the Democratic Republic of Congo, Burundi, and Tanzania. *Chan Decl.* ¶ 20. Mr. Dupont argues Respondents' "passive" rebuttal only further demonstrates there is good reason to believe removal is not significantly likely in the reasonably foreseeable future. *Am. Reply* at 13.

*Zadvydas* imposes a minimal burden on Mr. Dupont to produce good reason to believe removal is not reasonably foreseeable. *See D'Alessandro v. Mukasey*, 628 F.Supp.2d 368, 404 (W.D.N.Y. 2009) ('good reason to believe' does not place a "burden upon the detainee . . . to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite," but something less than that). Courts have considered "the passage of time combined with" the "government [being]

---

[4]    Because the Court does not reach Mr. Dupont's due process claim, the Court expresses no opinion as to the reasonableness of the length of Mr. Dupont's detention. *See, e.g., Fils-Aime v. FCI Berlin, Warden*, No. 1:25-cv-287-JL-TSM, 2025 U.S. Dist. LEXIS 215595, at *11-12 (D.N.H. Oct. 31, 2025) (describing the length of time courts generally consider unreasonably prolonged under the Due Process clause for immigration detention).

no closer to . . . repatriating [a noncitizen] than they were once they first took him into custody" as sufficient to meet petitioner's "initial burden." *Singh v. Whitaker*, 362 F. Supp. 3d. 93, 103 (W.D.N.Y. 2019); *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (explaining that the mere passage of time may suffice as good reason when "[t]he Government ha[s] brought forward nothing to indicate that a substantial likelihood of removal subsists").

Respondents' rebuttal does not convince the Court that removal is reasonably likely in the near future.  First, Respondents have failed to present any evidence of material progress on third country removal since July 9, 2025, when ICE began exploring Mr. Dupont's removal to countries neighboring Rwanda.  At oral argument, Respondents could not provide the court with information that the agency is any closer to effectuating removal to a third country than it was six months ago.  Second, ICE's 180-day POCR process remains pending more than three months after the agency undertook review of Mr. Dupont's custody status.  *Chan Decl.* ¶ 21.  At oral argument, Respondents similarly could not provide the Court with any new information concerning the status of ICE 180-day POCR process, particularly whether ICE was close to completing its review.  As Mr. Dupont's detention enters its fourth month beyond presumptive reasonableness and with the window of time constituting the reasonably foreseeable future exponentially diminishing, Respondents' plain assertations that the agency is "working on it" without providing any material information demonstrating removal is likely in the near future, the Court cannot conclude Mr. Dupont's removal is likely to occur in the reasonably

foreseeable future. *See, e.g.*, *Whitaker*, 362 F. Supp. 3d at 102 ("if [ICE] has no idea of when it might reasonably expect [petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur . . . in the reasonably foreseeable future"); *cf. G.P. v. Garland*, 103 F.4th 898, 902-03 (1st Cir. 2024) (denying *Zadvydas* claim where resolution of pending claims before the Board of Immigration Appeals, though pending beyond the *Zadvydas* period, provided a definite termination point for removing noncitizen in contrast to *Zadvydas* claims arising from the government struggling to find a country to effectuate a noncitizen's removal).

### B.    Conditions of Release

Under 8 U.S.C. § 1231(a)(3), a noncitizen who has not been removed within the removal period, shall be subject to supervision under regulations prescribed by the Attorney General.    The statutory provisions include (1) to appear before an immigration officer periodically for identification, (2) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government, (3) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate, and (4) to obey reasonable written restrictions on the noncitizen's conduct or activities that the Attorney General prescribes for the noncitizen.  8 U.S.C. § 1231(a)(3)(A)-(D).

On January 7, 2026, in response to an order from the Court, Respondents noted that if the Court granted the habeas corpus petition, they urged the Court to release Mr. Dupont subject to the conditions in Form I-220B, Order of Supervision.  *Resp'ts'*

*Resp. to the Cts.' Order to Respond.*, Attach. 1, *Order of Supervision* (ECF No. 28). However, Respondents filed only a blank form, which, in reply, Mr. Dupont argues is insufficient because the Form I-220B "envisions the agency [will make] a reasoned decision about *which* of [the] conditions should apply from a menu of options." *Pet'r's Reply Regarding the Ct.'s Order to Respond* at 1 (ECF No. 29) (emphasis in original). Mr. Dupont asks this Court to release him subject to §1231(a)(2)'s terms of supervision. *Id.* at 2-3. However, should the Court decide to include specific terms from Respondents' blank Form I-220B, Mr. Dupont asks that the Court decline to impose the conditions requiring electronic monitoring and ICE pre-approval for travel outside a certain range. *Id.* at 3-4.

The Court therefore imposes the three statutory conditions in § 1231(a)(3)(A)-(C), listed above. In addition, the Court imposes one more condition: that Mr. Dupont furnish written notice to the local ICE office of any change of residence or employment forty-eight hours prior to such change. If either Mr. Dupont or Respondents wish additional or more relaxed release conditions, they may seek approval.

### C.    Count Two: Violation of the Due Process Clause

As noted above, the Court has not reached the constitutional issues potentially presented in the pending petition. In Mr. Dupont's December 30, 2025 submission, he urged the Court to grant Count Two and enjoin Respondents from re-detaining him without pre-detention notice and an opportunity to be heard before an Immigration Judge. *Pet'r's Submission Regarding Appropriate Habeas Remedy* (ECF No. 26) (*Pet'r's Remedy Submission*). The Court declines to do so on this record,

because Respondents may or may not detain him again and, if they did, the circumstances of the detention could affect the Court's ruling on its legality. Because the Court is prohibited from issuing advisory rulings, the Court will address any future issues, if and when they arise. *See Cotter v. City of Boston*, 323 F.3d 160, 173 (1st Cir. 2003) ("Article III's cases and controversies language prohibits federal courts from issuing advisory opinions"); *accord Acevedo-Garcia v. Monroig*, 351 F.3d 547 (1st Cir. 2003).

### D.    Count Three, In the Alternative: Violation of the Due Process Clause and Statutory Protections

In Count Three, which the Petitioner raised in the alternative, Mr. Dupont asks the Court to issue an order prohibiting the Respondents from removing him to a third country without first providing him with meaningful notice and a meaningful opportunity to seek protection to avoid violation of his statutory and due process rights. *Pet.* at 18. In his December 30, 2025 submission, Mr. Dupont acknowledged that if the Court granted his proposed relief, he would withdraw Count Three without prejudice. *Pet'r's Remedy Submission* at 2-3. Although the Court is not clear what specific proposed relief Mr. Dupont is referring to, for the same reasons for the Court's action in Count Two, the Court dismisses Count Three without prejudice.

## V.    CONCLUSION

Pursuant to *Zadvydas*, the Court GRANTS Count One of Jean Dupont's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) and ORDERS Respondents to release immediately Jean Dupont from U.S. Immigration and Customs Enforcement custody, subject to the specific release conditions

authorized by this Court pursuant to 8 U.S.C. § 1231(a)(3)(A)-(C) and the provision contained in the Form I-220B, Order of Supervision, provided by Respondents on January 7, 2026, requiring written notice of any change of residence or employment. *Resp'ts' Resp. to the Cts.' Order to Respond.*, Attach. 1, *Order of Supervision* (ECF No. 28). The Court DISMISSES without prejudice Counts Two and Three of the Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1).

  SO ORDERED.

      /s/ John A. Woodcock, Jr.
      JOHN A. WOODCOCK, JR.
      UNITED STATES DISTRICT JUDGE

Dated this 9th day of January, 2026